## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

KELVIN TAYLOR                                                                         PETITIONER

V.                                                                      NO. 4:22-CV-78-DMB-RP

BRIAN HUFFMAN                                                                         RESPONDENT

### ORDER

Kelvin Taylor seeks a writ of habeas corpus under 28 U.S.C. § 2254.  For the reasons below, habeas relief will be denied.

### I
### Procedural History

On May 26, 2022, Kelvin Taylor filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States for the Northern District of Mississippi, asserting both exhausted and unexhausted claims.  Doc. #1.  On June 22, 2022, Taylor moved to hold his petition in abeyance to exhaust his state court remedies.  Doc. #7.  On July 6, 2022, the State moved to dismiss the petition as a "mixed" petition, Doc. #10 at 11–12; and responded in opposition to Taylor's abeyance request, arguing as an alternative that Taylor could amend his petition to delete the unexhausted claims, Doc. #9 at 12.  The Court denied Taylor's request to hold the petition in abeyance but allowed him an opportunity to amend his petition to remove the unexhausted claims, and granted in part the State's motion to dismiss to the extent it asked that Taylor be allowed to amend his petition for that purpose.  Doc. #12.  Taylor filed an amended petition on March 15, 2023, Doc. #13; and two weeks later moved to amend that petition to add new claims, Doc. #14. After considering the parties' submissions on the motion to amend,[1] the Court granted in part

---

[1] The State filed a response opposing amendment.  Doc. #15.  Taylor filed objections to the State's response.  Doc. #19.

Taylor's motion to amend on December 6, 2023, allowing him to add certain claims that related back to his original petition but denying a new untimely claim.  Doc. #21.

## II
## Standard

28 U.S.C. § 2254 provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254 "imposes a 'highly deferential standard for evaluating state-court rulings,' … 'and demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

The first exception in subsection (d)(1) applies to questions of law.  *Morris v. Cain*, 186 F.3d 581, 584 (5th Cir. 1999).  The question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  "When a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'"  *Shinn v. Kayer*, 592 U.S. 111, 112 (2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The second exception in subsection (d)(2) applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 56 (5th Cir. 1997). Because the facts are presumed to be determined reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1).

### III
### Factual Background and Procedural History[2]

#### A. Convictions and Sentences

The Mississippi Supreme Court found the following relevant facts related to Taylor's suppression challenges:

> After responding to a call on September 7, 2011, Officer Royneshia Turner found Willie Bass and Flora Watkins shot dead in their home in Clarksdale, Mississippi. *Taylor v. State*, [367 So. 3d 228] (Miss. Ct. App. []2020). On November 9, 2012, after the case went cold for more than a year, Lieutenant Marena Jones and Captain Mario Magsby of the Coahoma County Sheriff's Department traveled to the Bolivar County jail to interview Kelvin Taylor, where he was in custody awaiting trial for an unrelated capital murder. *Id.* at [232], [232] n.1. After Lieutenant Jones and Captain Magsby informed Taylor of the reason for their visit—to investigate the murder of Charlina Miller—Taylor told Lieutenant Jones that he wanted to talk to Coahoma County Sheriff Charles Jones. *Id.* at [232]. Later that evening, Lieutenant Jones and Sheriff Jones returned to interview Taylor, and, after informing Taylor of his Fifth Amendment rights per *Miranda v. Arizona*, 384 U.S. 436, 444[ ] (1966), Lieutenant Jones obtained a waiver of those rights from Taylor. Lieutenant Jones left the room to allow Sheriff Jones and Taylor to talk alone. *Taylor*, [367] So.3d at [232]. The conversation on November 9, 2012, did not provide Sheriff Jones with any information regarding the murders of Bass and Watkins. *Id.* When Sheriff Jones and Lieutenant Jones returned to the Bolivar County jail for a second interview on November 15, 2012, Taylor indirectly implicated himself in the murders. *Id.* [232–33].[3]

---

[2] The facts and procedural history in this section are largely drawn from the State's response to the petition as they are both well-documented and uncontested. Some facts are drawn from the "Affirmative Matters Pursuant to Rule 5" section, others from the sections following it, which include facts, as needed, to flesh out analysis of Taylor's grounds for relief.

[3] Specifically,

> A recorded portion of Taylor's second interview was played for the jury. During that portion, Sheriff Jones speculated that Bass had been killed because he had been selling drugs and that someone else

On May 27, 2015, Taylor was indicted for the murders of Bass and Watkins and for possession of a firearm by a felon. *Id.* [at 232]. Taylor filed two motions to suppress—one authored by his defense counsel and one pro se. *Id.* []. Taylor's pro se motion to suppress challenged the validity of the waiver of his Fifth Amendment right to counsel obtained by the Coahoma County Sheriff's Department because, according to Taylor, he had already invoked his Fifth Amendment right to counsel. *Id.* at [235], [235] n.6.

A week prior to Taylor's first trial, on July 11, 2016, the circuit court held a suppression hearing in which Sheriff Jones and Lieutenant Jones testified about their two interviews with Taylor. *Id.* at [233]. Neither Taylor nor his defense counsel presented evidence to substantiate Taylor's claim that he invoked his right to counsel before November 9, 2012. *Id.* at [235], [235] n.7. The circuit court denied Taylor's motions to suppress. *Id.* at [233]. Since the jurors were unable to reach a unanimous verdict at Taylor's first trial in 2016, the circuit court declared a mistrial. *Id.*

Taylor's second trial began on February 14, 2018. *Id.* Though Taylor renewed his motions to suppress, he presented no evidence of the February 6, 2012 invocation of the Fifth Amendment right to counsel[4] before his case-in-chief—after the circuit court had ruled on Taylor's motions to suppress and his renewed motions to suppress, the State had rested and Taylor's motion for directed verdict had been denied. Taylor's statement implicating him in the Bass and Watkins murders was introduced at trial along with the testimony of Sheriff Jones and Lieutenant Jones regarding their interviews with Taylor. *Id.* at [233–34]. After Taylor's statement was introduced at trial and the State rested, Taylor proffered the testimony of

---

in the area did not want the competition. Taylor responded, "Nah, that wasn't it." When Sheriff Jones asked Taylor to elaborate, Taylor said that Bass "was endangering people's lives" because he was a snitch. Taylor later clarified that he had been "involved in something" and he had "mentioned certain things to [Bass] and only [Bass]." He added that he "knew if [Bass] was a snitch that [Bass] would then tell the police. And when the police came to [Taylor,] that's exactly what they came with."[ ]

Sheriff Jones then asked Taylor why Watkins had been killed. Taylor answered, "[S]he was a witness to the crime." When Sheriff Jones speculated that Watkins had seen Taylor's face, Taylor denied that he was responsible for the victims' deaths. However, he reiterated that Watkins died because she "was a witness to the crime." On cross-examination, Lieutenant Jones conceded that Taylor did not confess that he killed Bass or Watkins. After Lieutenant Jones testified, Sheriff Jones briefly testified about his interactions with Taylor. The State rested its case-in-chief after Sheriff Jones's testimony.

*Taylor,* 367 So. 3d at 233. (alterations in original) (footnote omitted).

[4] Specifically,

It was not until Taylor's second trial that [he] finally proffered the testimony of Gerald Wesley[,] Jr., the chief deputy for the Bolivar County Sheriff's Department, who explained that Taylor invoked his right to counsel during a February 6, 2012 interview attempt. By then, the prosecution had already elicited testimony regarding Taylor's November 15, 2012 statement.

*Id.* at 235.

4

> Bolivar County Sheriff's Department Chief Deputy Gerald Wesley, Jr., that Taylor invoked his Fifth Amendment right to counsel on February 6, 2012. *Id.* at [234]. The court allowed the proffer so that the testimony of Chief Deputy Wesley, Jr., would appear in the record. *Id.* But the court ruled that Chief Deputy Wesley, Jr., could not testify at trial since it already dealt with Taylor's argument necessitating the testimony of Chief Deputy Wesley, Jr., in the court's denial of Taylor's motions to suppress and found his testimony irrelevant to the merits of the case.

*Taylor v. State*, 330 So. 3d 758, 760–61 (Miss. 2021) (paragraph numbering omitted; footnotes in original).[5]

A Coahoma County jury convicted Taylor of two counts of first-degree murder (Counts I and II) and one count of felon in possession of a firearm (Count III). Doc. #11-4 at PageID 613–17; Doc. #11-9 at PageID 1441.[6] Although indicted as a habitual offender for three prior violent crimes, the Coahoma County Circuit Court sentenced Taylor as a non-habitual offender to serve terms of life for each of his murder convictions and a term of ten years for his felon-in-possession conviction, with all sentences to run consecutive to one another. Doc. #29-1; *see* Doc. #11-1 at PageID 148-151; Doc. #11-4 at PageID 618–19; Doc. #11-9 at PageID 1447–51.

## B. Direct Appeal

The Mississippi Court of Appeals affirmed Taylor's convictions and sentences. *Taylor v. State*, 367 So. 3d 228 (Miss. Ct. App. 2020), *reh'g denied*, Sept. 15, 2020. Determining that Taylor did not present evidence at the suppression hearing supporting his argument that "his statement should have been suppressed because he invoked his right to counsel during a custodial interrogation on February 6, 2012," the Court of Appeals concluded "the circuit court could not have discussed evidence that Taylor did not present." *Taylor*, 367 So. 3d at 235. Indeed, Taylor

---

[5] At the time of the Mississippi Supreme Court's opinion, the Mississippi Court of Appeals had not yet published its decision. The Court has substituted and cited the now-published Mississippi Court of Appeals decision where applicable.

[6] The Court cites the state court record from Taylor's direct appeal which was filed on the docket in this case. *See* Doc. #11.

did not present any evidence supporting that argument until after the State rested at his second trial in February 2018. *Id.* Alternatively, the Court of Appeals "assum[ed] for the sake of discussion that Taylor had presented timely proof that he invoked his right to counsel" and determined that "the circuit court did not err when it allowed the prosecution to present the brief excerpt of Taylor's November 15, 2012 statement." *Id.* at 236. The Mississippi Court of Appeals also analyzed and rejected Taylor's prosecutorial misconduct claims related to the suppression hearing, *id.* at 236–37, finding "[t]here is no indication that Lieutenant Jones lied about the recording delay, so there is no support for a conclusion that the prosecution suborned perjury," *id.* at 236. It further noted that "the prosecution presented a written *Miranda* warning that Taylor signed." *Id.*

The Mississippi Supreme Court "granted certiorari to review the Mississippi Court of Appeals' decision as it relate[d] to Taylor's arguments that the circuit court erred by denying his motions to suppress." *Taylor v. State*, 330 So. 3d 758, 762 (Miss. 2021). It "further granted certiorari to correct a statement of the law surrounding waiver of the Fifth Amendment right to counsel" but ultimately affirmed the Court of Appeals' decision. *Id.*; *see also id.* at 762–68. On review, it "decline[d] to hold the circuit court in error for failing to discuss evidence not presented to it before ruling," *id.* at 764 (citing *Moore v. State*, 287 So. 3d 905, 913 (Miss. 2013); *Holloway v. State*, 809 So. 2d 598, 603–04 (Miss. 2000); *Batiste v. State*, 121 So. 3d 121 So. 3d 808, 858 (Miss. 2013)), reasoning that because "Taylor[] fail[ed] to present evidence of his invocation of the right to counsel" at the suppression hearing, "the circuit court could not have discussed evidence that Taylor did not present," *id.* at 763. The Mississippi Supreme Court also concluded that because the circuit court did not have before it "evidence of Taylor's February 6, 2012 invocation of the right to counsel," the circuit court applied the correct legal standard "to determine the voluntariness and admissibility of Taylor's November 15, 2012 statement, as well as the

validity of Taylor's *Miranda* waiver on November 9, 2012," and "there was substantial evidence, in the form of undisputed testimony from Lieutenant Jones and Sheriff Jones" at the suppression hearing to support the trial court's finding of voluntariness. *Id.* at 764–65.

The Mississippi Supreme Court "decline[d] to review the record for plain error since the standard for plain error [wa]s not met," explaining that though the court "may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved," "the error … must be a deviation from a legal rule … that is plain, clear, obvious, and has prejudiced the outcome of the trial." *Id.* at 768–69 (citing Miss. R. Evid. 103) (citations omitted). Recognizing that "Taylor [had] assert[ed] a substantial right," it found "plain-error review [wa]s inappropriate" and, based on the undisputed "testimony that Taylor gave the November 15, 2012 statement voluntarily[,]" "the circuit court did not err by denying Taylor's motions to suppress." *Id.* at 769. The Mississippi Supreme Court was not convinced "[Taylor] would be able to show that the admission prejudiced the outcome of trial," and it had "no means of determining, short of speculation, what the State may have introduced in response to Taylor's argument if timely presented to the circuit court or that Taylor's motions to suppress would have succeeded." *Id.*

### C. State Post-Conviction Proceedings

To date, the Mississippi Supreme Court's docket, as available on its official website, reflects that Taylor has not initiated any state post-conviction proceedings in that court regarding the convictions and sentences he challenges in the present petition—his 2018 Coahoma County convictions and sentences for first-degree murder and possession of a firearm by a felon.[7]

---

[7] Taylor has initiated other proceedings in the Mississippi Supreme Court, as shown on its online docket. He filed a mandamus proceeding (Cause No. 2016-M-797) and unsuccessfully requested an interlocutory appeal (Cause No. 2016-M-1142)—both related to trial court proceedings in this case and neither of which constitutes a proper application for post-conviction collateral relief. He also initiated post-conviction proceedings on his 2014 Bolivar County convictions and sentences for capital murder and felon in possession of a firearm (Cause Nos. 2018-M-1471, 2018-M-1500). *See Maggett v. State*, 230 So. 3d 722 (Miss. Ct. App. 2016), *reh'g denied*, July 18, 2017, *cert. denied*, Nov. 16, 2017 (Cause No. 2015-CT-215-COA) (Taylor's joint direct appeal of his 2014 Bolivar County convictions

### D.  This Petition

Due to the Court granting in part and denying in part Taylor's request to amend his petition, the Court allowed the claims in Grounds One, Two, and Four to proceed.[8]

Ground One asserts Taylor's conviction and sentence is illegal in violation of the due process clause of the Fourteenth Amendment to the U.S. Constitution because the State knowingly presented false testimony at his suppression hearing and trial.  Doc. #13 at PageID 2611, 2625–26, 2648–49.

Ground Two asserts Taylor was denied a fundamental fair trial because the trial court admitted his statement obtained illegally after he requested counsel during custodial interrogation on February 6, 2012; and that the trial court failed to find as a fact that a waiver of rights was knowing, intelligent, and voluntary, as required by law.  *Id.* at PageID 2613, 2627, 2647.

And Ground Four asserts the circuit court erred by denying Taylor's motion to suppress, applying an incorrect legal standard, and misapplying the law; and the Court of Appeals erred too. *Id.* at PageID 2616.

### IV
### Discussion

Because the Mississippi Supreme Court already considered the claims in Grounds One, Two, and Four on the merits and decided those issues against Taylor, such claims are barred from habeas review by this Court pursuant to the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions.  As discussed below, because Taylor

---

and sentences for capital murder and felon in possession of a firearm).  None of these actions bear on the current proceedings.

[8] As the State explained in its response to Taylor's motion to amend, Grounds One and Two of Taylor's original petition and his amended petition are the same, except Taylor reversed their order in his amended petition.  *See* Doc. #15.  In his amended petition, Taylor attached copies of his supporting facts and argument to Ground Two that were originally presented in Ground One.

has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts or that its decision contradicted federal law, the exception in subsection (d)(1) does not apply to Grounds One, Two, and Four. Nevertheless, under § 2254(d)(2) these grounds may still merit review if the Mississippi Supreme Court determined the relevant facts unreasonably in light of the evidence presented.

### A. Ground One

In Ground One, Taylor alleges that his conviction and sentence are illegal "because the State knowingly presented false testimony at his suppression hearing and trial." Doc. #13 at PageID 2611, 2625–26, 2648–49. Specifically, Taylor contends at his suppression hearing Lieutenant Jones "testified falsely under oath" that "prior to the Nov-9-2012 custodial interrogation that she gave [him] *Miranda* warnings, that he waived those rights, and agreed to give a statement, and that it was evidenced by 'a recording.'" *Id.* at PageID 2625. He claims that the substance of Lieutenant Jones' testimony regarding *Miranda* warnings was not part of the audio recordings of November 9, 2012, or November 15, 2012, or in her investigative report. *Id.* at PageID 2625–26. Taylor further states that Lieutenant Jones "testified falsely that during the Nov-15-2012 interrogation, [he] gave a motive of why he killed" the victims; and that Sheriff Jones falsely "testified that [Lieutenant] Jones gave Taylor *Miranda* warnings on Nov-15-2012 not Nov-9-2012." *Id*. at 2626. Further, Taylor claims he was not given "a full and fair hearing because the trial court failed to give [him] notice and an opportunity to be heard during the suppress[ion] hearing, after [he] filed his pro se motion to suppress." *Id.*[9]

The Mississippi Court of Appeals rejected Taylor's prosecutorial misconduct claim that

---

[9] The Court references Marena Jones as "Lieutenant Jones" and Coahoma County Sheriff Charles Jones as "Sheriff Jones" to be consistent with the state appellate courts. *See, e.g, Taylor*, 367 So. 3d 228; *Taylor*, 330 So. 3d 758.

the State knowingly presented false testimony. *Taylor*, 367 So. 3d at 236–37.[10] It first found that "[t]here is no indication that Lieutenant Jones lied about the recording delay, so there is no support for a conclusion that the prosecution suborned perjury," and "[f]urthermore, the prosecution presented a written *Miranda* warning that Taylor signed." *Id.* at 236. Additionally, it pointed out that though "the hearing transcript clearly shows that Lieutenant Jones never mentioned a written waiver," it is plausible that "she had forgotten about it at that time." *Id.* at 237.

"[A] state criminal conviction obtained by the knowing use of false evidence" violates due process. *Miller v. Pate*, 386 U.S. 1, 7 (1967) (citing *Mooney v. Holohan*, 294 U.S. 103 (1935)). The result is the same "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959) (citations omitted). To prevail on a claim that "a prosecutor[] use[d] … perjured testimony or fail[ed] to correct such testimony, a *habeas* petitioner must demonstrate that 1) the testimony was actually false, 2) the state knew it was false[,] and 3) the testimony was material." *Pyles v. Johnson*, 136 F.3d 986, 996 (5th Cir. 1998) (citations omitted). The testimony is material when "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Canales v. Stephens*, 765 F.3d 551, 573 (5th Cir. 2014) (quoting *United States v. Agurs,* 427 U.S. 97, 103 (1976) (citing *Giglio v. United States,* 405 U.S. 150, 154, (1972))).

Taylor has not shown the State knowingly presented false evidence; the evidence in the record reflects the opposite. As mentioned below, Lieutenant Jones and Sheriff Jones testified at the suppression hearing (and at trial), that Lieutenant Jones gave Taylor his *Miranda* rights, although the witnesses did not agree as to the date. Doc. #11-6 at 20–23, 30–35, 45–46, 52, 55–57; Doc. #11-8 at 106–11, 146–52; Doc. #11-9 at 3. Though the recording of Taylor's November

---

[10] Although Taylor raised this specific prosecutorial misconduct claim in his certiorari petition, the Mississippi Supreme Court only addressed his suppression and new ineffectiveness claims on certiorari review.

2012 interview did not contain the *Miranda* warning, Sheriff Jones testified Taylor had waived his *Miranda* rights, and had signed the standard waiver of rights form. Doc. #11-6 at 52, 55–57. And the State introduced Taylor's waiver of rights form (admitted as exhibit 10 at trial), which was consistent with Lieutenant Jones' testimony, showing Taylor signed the form on November 9, 2012, and Lieutenant Jones signed as a witness. Doc. #11-8 at 107–08; Doc. #11-10 at 100. Taylor has provided no evidence that Lieutenant Jones and Sheriff Jones gave false testimony; rather, their testimony at the suppression hearing and during the State's case-in-chief during Taylor's second trial reflected that Taylor received *Miranda* warnings – and that he waived those rights. Taylor did not, however, present evidence of his prior invocation of his right to counsel (as to his unrelated Bolivar County capital murder charge) until after the State had rested during his second trial – approximately eighteen months after the circuit court's suppression ruling.

While Taylor alleges that "the trial court did not give [him] a full and fair hearing because the trial court failed to give [him] notice and an opportunity to be heard during the suppress[ion] hearing, after [he] filed his *pro se* motion to suppress," Doc. #13 at PageID 2626,[11] such allegation is clearly contradicted in the record. On July 11, 2016, the circuit court conducted a thorough hearing on Taylor's suppression motions (one presented by counsel, the other pro se). Doc. #11-6 at 16–77. Taylor was actively involved in his defense—he questioned Sheriff Jones on cross-examination at trial. Doc. #11-8 at 144–52. Certainly, had Taylor wished to present argument to the court or examine witnesses at the suppression hearing, he could have done so. Given this, the

---

[11] It is unclear whether Taylor exhausted this claim. *See* 28 U.S.C. § 2254(b)(2) (claim "may be denied on the merits, notwithstanding the failure of the applicant to exhaust"). Even if he had properly exhausted this claim, the Court must presume the state courts rejected it on the merits. *See Johnson v. Williams*, 568 U.S. 289, 298 (2013) (citing *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (holding the *Richter* presumption—that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary"—equally applies "when a state-court opinion addresses some but not all of a defendant's claims")). Regardless, under either standard, this claim is meritless.

circuit court provided Taylor a "full and fair hearing" on his suppression motions.

As to Ground One, Taylor has not shown the state court's rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law. Nor has he shown that the state court's determination of the facts was unreasonable in light of the evidence presented. So, Taylor's claims for relief in Ground One will be denied.

## B. Grounds Two and Four

In Grounds Two and Four, Taylor challenges the trial court's denial of his motions to suppress his statement, arguing that "the trial court admitted his statement obtained illegally after [he] requested counsel during custodial interrogation on February 6, 2012" and that the state courts applied an incorrect legal standard and failed to determine that his waiver of rights was knowing, voluntary, and intelligent. Doc. #13 at PageID 2613, 2616, 2627. In support of these arguments, Taylor recites his memory of the November 2012 police interviews. *Id.* at PageID 2632–48.

### 1. Invocation-of-counsel claim

At his second trial after the State rested, Taylor presented evidence that he had invoked his right to counsel in February 2012 on his unrelated Bolivar County capital murder charge.[12] But he presented this evidence more than eighteen months after the circuit court's suppression hearing and ruling and his first trial. Neither the Mississippi Court of Appeals nor the Mississippi Supreme Court found error in the trial court's decision to forego "discuss[ing] evidence not presented to it before ruling." *Taylor*, 330 So. 3d at 764. The Mississippi Supreme Court also declined to address Taylor's claims under the plain error standard. *Id.* at 768–69 (citing Miss. R. Evid. 103(f)). For

---

[12] That Taylor invoked his right to counsel in one case but was later interrogated about another does not invalidate his present claim. *See Arizona v. Roberson*, 486 U.S. 675 (1988) (invocation of right to counsel is not case-specific). Nor is it relevant that different law enforcement officers conducted Taylor's second interrogation. *See Minnick v. Mississippi*, 498 U.S. 146, 148–49, 155 (1990) (statements of defendant derived from reinitiation of custodial interrogation by county deputy sheriff were inadmissible because petitioner had previously invoked his Fifth Amendment right to counsel during interrogation by FBI agents).

these reasons, Taylor's claim and supporting evidence that he invoked counsel are procedurally barred from federal habeas corpus review.

Under the doctrine of procedural bar, a federal court may not review a petitioner's claims "when (1) a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas,* 565 U.S. 266, 280 (2012) (citation omitted). To establish the independence and adequacy of a claim, "the state court's dismissal must clearly and expressly indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts and applied to the majority of similar claims." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012). A state court's rejection of a claim for "failure to preserve an issue for appeal by failing to make a proper offer of proof constitutes an independent and adequate procedural bar." *Id.* at 614 (addressing Texas Rule of Evidence 103(a)(2), requiring proffer be made); *see Green v. Mississippi*, No. 3:13-CV-57, 2015 WL 1825243, at *3 (N.D. Miss. Apr. 22, 2015) (applying *Roberts* to Mississippi Supreme Court's application of Mississippi Rule of Evidence 103 to bar claim); *see also*, *e.g.*, *Day v. King*, No. No. 1:03CV624, 2006 WL 2541600, at *4 n.4 (S.D. Miss. Aug. 31, 2006) (noting Mississippi cases holding issues procedurally barred for failure to lodge contemporaneous objection or present issue to trial court). To find a state procedural bar adequate, a court must determine whether the state court "has strictly or regularly applied it." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (citing *Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). The petitioner "bears the burden of showing that the state court did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Id.* at 860.

Taylor has neither shown nor asserted that the state court applied the procedural bar inconsistently and irregularly. Consequently, Taylor's claim and supporting evidence regarding invocation of counsel is barred from federal habeas review because it was rejected in state court under an independent and adequate state procedural rule. *Id.* at 861.

Taylor may also overcome the state procedural bar if he can show either "cause" and "prejudice" for his default, or that a "fundamental miscarriage of justice" would result should the court apply the bar. *Coleman v. Thompson*, 501 U.S. 722, 749– 50 (1991); *see Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996) (citing *Sawyer v. Whitley*, 505 U.S. 333 (1992)). To find the "cause" necessary to excuse a procedural default, the federal court must find that "something external to the petitioner, something that cannot fairly be attributed to him," caused the default. *Coleman*, 501 U.S. at 753. Objective factors courts have relied on in the past to find cause include "interference by officials" and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." *McClesky v. Zant*, 499 U.S. 467, 494 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Attorney error may constitute cause to overcome the bar when the error rises to the level of the denial of effective assistance of counsel. *Murray*, 477 U.S. at 488. However, unless the court finds that counsel provided unconstitutionally ineffective assistance, attorney error does not constitute cause and thus will not overcome a petitioner's procedural default. *Id*. at 494.

Because Taylor has not identified or exhausted any ineffective-assistance-of-counsel claims regarding failure to present evidence in support of his invocation-of-counsel argument, he cannot show attorney error caused his failure, which means he cannot overcome the procedural bar to raising this claim. *Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *see Murray,* 477 U.S. at 488–89. Since Taylor has not shown cause to excuse his procedural default, the Court need not

14

consider whether there is actual prejudice. *Martin*, 98 F.3d at 849.

Nor will the Court's application of the procedural bar regarding Taylor's invocation-of-counsel claim result in a "fundamental miscarriage of justice." Such exception is limited to cases of actual innocence, "where the petitioner shows, as a factual matter, that he did not commit the crime of [his] conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)).

To establish the requisite probability that he was "actually innocent," Taylor must support his allegations with new, reliable evidence not presented at trial, and must show it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644. Taylor does not allege "as a factual matter, that he did not commit the crime[s] of conviction" because he has not presented any new, reliable evidence showing it was more likely than not that no reasonable juror would have convicted him in light of such evidence. So, he has not shown a fundamental miscarriage of justice would result if the Court does not consider the merits of his invocation-of-counsel claim. As such, the Court may not consider the merits of Taylor's invocation-of-counsel claim in Ground Two and such claim will be dismissed with prejudice as procedurally barred.

### 2. Remaining suppression claims

Taylor argues the state courts applied an incorrect legal standard, and failed to hold he waived his rights knowingly, voluntarily, and intelligently. Doc. #13 at PageID 2613, 2616.

Under the Fifth and Fourteenth Amendments, "an accused has a … right to have counsel present during custodial interrogation." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). A federal court may address potential Fifth amendment violations through habeas review. *Withrow v. Williams*, 507 U.S. 680, 683 (1993). If a petitioner "indicates in any manner, at any time prior to

or during questioning, that he wishes to remain silent, [or if he] states that he wants an attorney, the interrogation must cease." *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (alteration in original) (quoting *Miranda v. Arizona,* 384 U.S. 436, 473–74 (1966)) (citing *Edwards,* 451 U.S. at 477).

 "[A]fter initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation." *Edwards*, 451 U.S. at 484. To be valid, a waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. Additionally, a valid "waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* "Only if the 'totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* "A statement is involuntary if there existed official, coercive conduct that made it unlikely the statement was a product of the individual's free choice." *Rogers v. Quarterman*, 555 F.3d 483, 491 (5th Cir. 2009).

If a defendant has invoked his right to have counsel present during a custodial interrogation, the State cannot show that he waived that right merely by showing he "responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010) (citing *Edwards*, 451 U.S. at 484–85). A defendant may not be interrogated further "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.*

Before trial, Taylor, both pro se and through counsel, sought to suppress his recorded audio statement from November 15, 2012. Doc. #11-1 at PageID 171–73, 201–15. He argued "his statement given at the November 15, 2012 interview should be suppressed since he had previously

16

invoked his Fifth Amendment right to counsel" during a custodial interrogation on an unrelated Bolivar County capital murder charge on February 6, 2012. *Taylor*, 330 So. 3d at 762; *see* Doc. #11-1 at PageID 171–73, 201–15; Doc. #11-3 at PageID 490–98. He also argued that he was never *Mirandized* and did not waive his right to counsel. Doc. #11-1 at PageID 201–15; Doc. #11-3 at PageID 490–98, 537–39.

The circuit court held a hearing on Taylor's motions to suppress on July 11, 2016. Doc. #11-6 at PageID 890–951. Lieutenant Jones and Sheriff Jones testified at the hearing. Investigator Jones received information that Taylor knew about another crime she was investigating so she and another officer visited Taylor at the Bolivar County Correctional Facility on November 9, 2012, where Taylor was being held on an unrelated capital murder charge. *Id.* at PageID 892–93, 902–03. However, Taylor would not speak with them, instead asking "to speak with Sheriff Charles Jones of Coahoma County Sheriff's Office." *Id.* at PageID 894, 902–04, 919, 924. Sheriff Jones and Lieutenant Jones visited Taylor later the same day, and Lieutenant Jones gave Taylor his *Miranda* rights then. *Id.* at PageID 894–97, 904–09, 919–20. Lieutenant Jones repeatedly confirmed Taylor was provided his *Miranda* rights, though "[t]here was a[n] apparent delay in the … recording that did not capture *Miranda*" because of the "outdated" recorder used. *Id.* at PageID 895, 905–09.

Although testimony conflicted regarding when the *Miranda* warnings were given, Sheriff Jones confirmed that Lieutenant Jones "verbally" gave Taylor *Miranda* warnings "and [that] he signed it" on "a hard copy" of the standard waiver of rights form. *Id.* at PageID 926, 929–31. Lieutenant Jones waited outside the room while Taylor "spoke with the Sheriff," and Taylor "basically admitted to having involvement" in another murder case. *Id.* at PageID 895–97, 920. Taylor also "spoke of the Willie Bass and Flora Watkins case." *Id.* at PageID 898. During the

17

interview, Taylor "was told that at a later date [they] … would be back to speak with him again in reference to other matters that occurred in Clarksdale" and Taylor did not "pose any opposition at that time." *Id.*; *see id.* at PageID 920. Taylor asked Sheriff Jones "when [he] was coming back; [h]e … wanted to make sure [Sheriff Jones] was gonna come back and talk to him." *Id.* at PageID 921.

Lieutenant Jones and Sheriff Jones returned to Bolivar County Jail to speak with Taylor on November 15, 2012. *Id.* at PageID 898, 920–21. Lieutenant Jones testified Taylor was not re-*Mirandized* then because "he informed [them] that he spoke with his attorney [representing him on his unrelated Bolivar County capital murder charge], and his attorney advised that he was working on good faith." *Id.* at PageID 899, 909–10, 916. Again, Taylor gave no "indication of involuntariness" and "[h]e began speaking freely after he had informed [them] that he had been in contact with his attorney." *Id.* at PageID 899; *see id.* at PageID 901, 921, 923. Taylor "started talking about other cases and other things that he had done over the years in Clarksdale, just things that no one had any idea of." *Id.* at PageID 921. Taylor also revealed a motive for killing Bass and Watkins—he had recently discovered Bass was a police informant and Watkins was a witness to Bass' murder. *Id.* at PageID 900, 922.

But "[a]t no point during the suppression hearing did Taylor or his counsel present evidence of Taylor's invocation of the Fifth Amendment right to counsel," particularly that "on February 6, 2012" he invoked his right to counsel on his unrelated Bolivar County charge. *Taylor*, 330 So. 3d at 762. Rather, "[t]he circuit court heard testimony that Taylor waived his *Miranda* rights and, therefore, the circuit court admitted Taylor's statement indirectly implicating him in the Bass and Watkins murders." *Id.*; Doc. #11-2 at PageID 407–15. Taylor told the investigators he had spoken with his attorney representing him on his unrelated Bolivar County capital murder charge and that

they were working in "good faith."  Doc. #11-6 at PageID 899, 909–10, 916.

Based on the testimony presented, the circuit court determined Taylor "was properly charged with his *Miranda* rights on November 9, 2012."  Doc. #11-2 at PageID 408–09.  The circuit court also found that when he was arrested on the Bolivar County capital murder charge in February 2012, it "[wa]s uncertain what [Taylor] mean[t] by claiming to have 'invoked his right to counsel'" because the circuit court "[wa]s unaware of any formal document invoking such right" and "[Taylor] offer[ed] nothing suggesting how he 'invoked his right to counsel.'"  *Id.* at PageID 411.

The circuit court further reviewed whether Taylor's statement was voluntary.  *Id.* at PageID 413–15.  First, the circuit court determined the fact that Taylor was not re-*Mirandized* for the" November 15, 2012, interview "is not necessarily fatal to the admissibility of [that] statement." *Id.* at PageID 413 (citing, among other things, *United States v. Anthony*, 474 F.2d 770, 773 (5th Cir. 1973), which held repeated warnings are not necessary to finding that a defendant, with full knowledge of his rights, knowingly and intelligently waived them)).  The circuit court noted that the State has the "initial burden of voluntariness" but that a "defendant may rebut the testimony with contrary evidence," and Lieutenant Jones and Sheriff Jones met the State's initial burden because they "testified that [Taylor] received the required *Miranda* warnings, albeit there [wa]s conflict in their testimony as to when such warnings were given."  *Id.* at PageID 414–15.  Further, Lieutenant Jones and Sheriff Jones testified "the statement(s) given by [Taylor] were free and voluntary."  *Id*.  Taylor "offered no testimony or evidence contradicting the testimony of the officers."  *Id.* at PageID 415.  Therefore, the circuit court concluded Taylor gave his statement "freely and voluntarily."  *Id.*  The circuit court also acknowledged that it listened to the more than two-hour recording of Taylor's interview on November 15, 2012, and noted that Taylor never

asserted his right to counsel and that the officers never threatened, coerced, or offered Taylor any hope of reward. *Id.*

Taylor, both pro se and through counsel, renewed his suppression motions for his second prosecution. Doc. #11-3 at PageID 490–98, 537–39, 594–96; *see* Doc. #11-7 at PageID 1110 (defense counsel explaining his motion to dismiss "incorporated or renewed the motion to suppress the … Defendant's statement"). After additional argument, the circuit court again denied the suppression motions, determining it "already ruled on" them. Doc. #11-7 at PageID 1163. During his second trial, Taylor raised the *Miranda*-warning issue before the jury. After the State rested, he proffered testimony from a Bolivar County police officer acknowledging that Taylor had invoked his right to counsel on his Bolivar County charge. Doc. #11-9 at PageID 1354–64. That testimony was, however, neither timely nor properly submitted. Indeed, "[t]he testimony of Chief Deputy Wesley, Jr., regarding Taylor's invocation of the right to counsel was not introduced until Taylor's second trial" after (1) "the circuit court had already heard and ruled on Taylor's motions to suppress and the renewed motions to suppress," (2) "Taylor's November 15, 2012 statement had already been played before the jury," (3) the State had rested," and (4) "the circuit court had denied Taylor's motion for directed verdict." *Taylor*, 330 So. 3d at 762–63.

The Mississippi Supreme Court affirmed the circuit court's suppression rulings. *Id.* at 762–69. It discussed the clearly established federal law regarding *Miranda* warnings, specifically, "police officers must warn a suspect prior to questioning that he has a right to remain silent, and a right to the presence of an attorney;" "if the suspect states that he wants an attorney, the interrogation must cease until an attorney is present;" and "[t]his right may be waived" but the State must show that the waiver "was knowing, intelligent, and voluntary." *Id.* (citing *Shatzer*, 559 U.S. at 103; *Miranda*, 384 U.S. at 474; *Johnson v. Zerbst*, 304 U.S. 458 (1938)).

20

The Mississippi Supreme Court also discussed the "rule in *Edwards* [that] presume[s] involuntariness of subsequent waivers following the invocation of the right to counsel." *Taylor*, 330 So. 3d at 766 (citing *Shatzer*, 559 U.S. at 104). It found the circuit court did not err in declining to suppress a statement "based on evidence that was never presented to the circuit court before ruling." *Id.* at 763–64. Noting that the circuit court did not have before it "evidence of Taylor's February 6, 2012 invocation of the right to counsel," it found the circuit court applied the correct legal standard "to determine the voluntariness and admissibility of Taylor's November 15, 2012 statement, as well as the validity of Taylor's *Miranda* waiver on November 9, 2012." *Id.* at 764–65. The Mississippi Supreme Court concluded that the undisputed testimony of Lieutenant Jones and Sheriff Jones at the suppression hearing "was substantial evidence" to "support[] the circuit court's finding of voluntariness." *Id.* at 765. It declined to review the claim for plain error because the circuit court did not "deviate[] from a legal rule such that it committed error that was plain, clear, obvious or that prejudiced the outcome of Taylor's trial." *Id.* at 769. It was not "[]convinced that [Taylor] would be able to show that the admission prejudiced the outcome of trial because" it could only speculate as to what the State may have introduced in response to Taylor's argument (if timely presented to the circuit court) or that the circuit court would have granted Taylor's motions to suppress. *Id.*

Put simply, the testimony at the suppression hearing supported the circuit court's ruling and the Mississippi Supreme Court's affirmance that Taylor received proper *Miranda* warnings and waived them before his November 2012 statement. The testimony and signed waiver-of-rights form reflect that "after initially being advised of his *Miranda* rights," Taylor "waive[d] his rights and respond[ed] to interrogation." *Edwards*, 451 U.S. at 482. The testimony of Lieutenant Jones and Sheriff Jones confirmed Taylor chose to speak to them freely and was not intimidated, coerced,

21

or deceived into doing so. Further, Taylor stated that he had spoken to his attorney representing him on his unrelated Bolivar County capital murder charge – and that he was talking to Lieutenant Jones and Sheriff Jones in "good faith." *See Moran*, 475 U.S. at 421. Indeed, Taylor initialed each right that he was waiving on his waiver-of-rights form, showing that he was fully aware "of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. Indeed, the "totality of the circumstances surrounding the interrogation" presented at the suppression hearing "reveal[ed] both an uncoerced choice and the requisite level of comprehension" to "conclude that [Taylor's] *Miranda* rights ha[d] been waived." *Id.* Indeed, Taylor presented no evidence otherwise until after the State rested at his second trial – though given the opportunity to do so before his first and second trial. Accordingly, Taylor's argument that that state courts applied an incorrect legal standard to his suppression arguments is wholly without merit.

For these reasons, Taylor has not overcome the deference a federal court must give the state court's rejection of his properly presented claims in Grounds Two and Four. The Mississippi Supreme Court discussed and applied clearly established federal law in affirming the circuit court's suppression ruling. And the uncontroverted testimony of Lieutenant Jones and Sheriff Jones at the suppression hearing supported the Mississippi Supreme Court's rejection of Taylor's suppression arguments. Taylor has not shown such rejection was an unreasonable application of, or contrary to, clearly established federal law. He also has not proven the state court's determination of facts was unreasonable in light of the evidence presented. So, Taylor's request for relief on his properly presented claims in Grounds Two and Four will be denied.

## V
## Certificate of Appealability

Rule 11 of the Rules Governing § 2254 Cases in the United States District Courts requires

22

a court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability ("COA") will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

Here, Taylor has failed to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1993) (superseded by statute) (citations and quotations omitted); 28 U.S.C. § 2253(c)(1) and (2). A certificate of appealability should not issue in this case.

## VI
## Conclusion

Taylor's petition for a writ of habeas corpus [1] is **DENIED**. A certificate of appealability is **DENIED**. A final judgment will issue.

**SO ORDERED**, this 12th day of September, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**